UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

OmniProphis Corp. d/b/a Screened Images, Inc.,

                      *Plaintiff,*

          v.

Vanteon Corp.,

                      *Defendant.*

**COMPLAINT**

**Case No.:**

---

Plaintiff, OmniProphis Corp. d/b/a Screened Images, Inc., by its attorneys, Goldberg Segalla LLP and, pending admission *pro hac vice* to this Court, Kenney & Sams, P.C., as and for its Complaint for relief against Vanteon Corp., alleges upon information and belief as follows:

## INTRODUCTION

1. Beginning in April of 2018, Plaintiff, OmniProphis Corp. d/b/a Screened Images, Inc. ("Screened Images" or "Plaintiff") began working with Vanteon Corp. ("Vanteon" or "Defendant") to develop a highly confidential and proprietary Software Defined Radio Program. This development work was meant to be the basis for the next generation of Screened Images products, which are used to ensure that incarcerated people are not able to use dangerous and unregulated "burner" cell phones while in prison.

2. Screened Images hired Vanteon because Vanteon represented that it had the expertise and know-how to successfully complete this development work. Screened Images relied on these representations and contracted with Vanteon to complete the development work.

3. However, the project was a disappointment from the start, as Vanteon repeatedly failed to provide deliverables it had promised, and Screened Images had paid for; missed every

contract deadline; and continued to demand more and more money while failing to show any results.

4. After months of this, Screened Images finally stopped payment until Vanteon would agree to a firmer timeline for project completion, with a set budget. Vanteon refused. Now, more than $300,000 into the project without a single useful deliverable to show for it, and having lost out on a significant competitive advantage it would have enjoyed if this project had proceeded as agreed, Screened Images had no choice but to bring this action to recover its lost funds and attendant damages.

## PARTIES

5. The plaintiff, OmniProphis Corp., d/b/a Screened Images, Inc., is a Massachusetts corporation located at 15 Mill Wharf Plaza, Suite 3000, Scituate, Massachusetts 02066.

6. The defendant, Vanteon Corp., is a New York corporation located at 230 Cross Keys Office Park, Suite 285, Fairport, New York, 14450.

## JURISDICTION and VENUE

7. The damages sought by Plaintiff from Defendant exceed $100,000.00.

8. Plaintiff and Defendant are Citizens of different States.

9. The Court has jurisdiction over the parties and the subject matter of this action pursuant to CPLR 301 and 28 U.S.C. §§ 1332 and 2201.

10. This Court is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) as the judicial district in which Defendant resides.

11. The parties have agreed to the application of New York law and jurisdiction for disputes arising under the contractual agreements at issue in this lawsuit.

**FACTS**

12. In or about April 2018, Screened Images contracted with Vanteon to develop the "Phoenix Project," a new Software Defined Radio ("SDR") Program.

13. Prior to entering into a contract to perform this work, Screened Images and Vanteon engaged in numerous meetings and conversations, including high-level discussions about the project and more specific technical discussions in April of 2018.

14. During these meetings and conversations, Screened Images explained in detail to Vanteon that the use of the Phoenix Project would be for use in managing cellular telephone access over a number of channels simultaneously, technology which would have immense practical impacts in Screened Images's work to prevent the illicit use of "burner" cellphones by incarcerated persons.

15. During these meetings and conversations, Screened Images provided Vanteon with detailed information regarding the various engineering, telecommunications and other technical specifications that would be necessary to design, develop and produce the materials needed for the Phoenix Project SDR.

16. During these meetings and conversations, Vanteon acknowledged the engineering, telecommunications and other technical specifications articulated and explained by Screened Images.

17. During these meetings and conversations, Vanteon represented that it employed properly educated, trained and experienced engineers with adequate skill and knowledge sufficient to satisfy all engineering, telecommunications and other technical requirements for successful completion of the novel SDR Screened Images wanted to bring to market.

18. During these meetings and conversations, Vanteon represented that it had sufficient project management experience to adequately budget the time and resources that would be needed to complete the novel SDR.

19. Among other things, Vanteon represented that it had the requisite expertise to use the Xilinx evaluation board, a critical component of the Project, which is an "off the shelf" product that should have been simple to use for a company with Vanteon's purported expertise.

20. Vanteon made such representations at numerous meetings with Screened Images and their consultant on or about at least April 23, 2018 and May 8, 2018, including through written promotional material that stated that Vanteon had a SDR platform that "offers the following key features: Xilinx Zynq Family FPGA for high performance signal processing."

21. Screened Images hired Vanteon to help in the development of this invention based on Vanteon's representations that it had the experience, technical ability, unique intellectual property, and team to execute this work, and to complete the Phoenix Project SDR on time and on budget.

22. As Screened Images would later learn, Vanteon's representations were misleading in a material way, and intended to induce Screened Images to enter into a contractual agreement with Vanteon, and to pay Vanteon hundreds of thousands of dollars for services Vanteon was never able to perform.

23. Furthermore, Vanteon's materially misleading representations were directed to consumers in New York State, including on Vanteon's public-facing website, www.vanteon.com, which contains a plethora of deceptive statements including, but not limited to, the following:

> Vanteon is a complete electronic systems design and engineering solutions company with technical emphasis on Wireless Solutions.

4

27414162.v1

> While we technically have a focus on wireless solutions, our team of dedicated engineers can support our clients with all forms of engineering product development.
>
> Using our industry knowledge, collaborative processes, and project execution capabilities, we help our clients identify solutions to specific technology challenges as well as approaches for the development of innovative product lines.

24. Following these meetings and discussions, Screened Images and Vanteon entered into a Master Services Agreement in April of 2018 ("MSA").

25. The MSA provides a warranty that Vanteon will perform the services in a "professional, workmanlike manner, with the degree of skill and care that is required by current, good and sound professional procedures and practices."

26. Vanteon knew that Screened Images wanted this work to proceed as quickly as possible.

27. In fact, the first Statement of Work ("SOW"), from Phase 0 April 2018, states: "Vanteon understands that Screened Images has a true concern with time-to-market (TTM), and will make every effort to deliver this project efficiently and expeditiously."

28. Both the Phase 0 April 2018 SOW and the Phase I October 2018 SOW include schedules for various project milestones, and Vanteon promised to "make all reasonable efforts to complete the work described in [these SOWs], in accordance with the milestone schedule."

29. The Project was to rely heavily on an "off the shelf" Xilinx evaluation board. The most important milestone, building off of this component among other efforts, was to provide 12 channels of uplink and downlink.

30. Despite this understanding and Vanteon's representations, Vanteon allowed the Project to fall well behind schedule and over-budget.

5

31. Beginning on or about March 14, 2019, Vanteon began to experience significant communication pathway problems, including being unable to properly use the Xilinx evaluation board.

32. This "detour" in the project was due to Vanteon not having the skills and experience that Vanteon previously represented prior to entering any formal agreements with Screened Images.

33. The problems Vanteon experienced with the communication pathway were basic data communications and timing problems, which would not have occurred if Vanteon had the required expertise, or if Vanteon had, from the outset of the problem, leveraged available expertise to expedite the solution of these communication pathway problems.

34. By July 8, 2019, months after Vanteon had promised to complete the project as outlined in the Phase I SOW schedule, Vanteon had completed only two of the promised 12 channels of uplink and downlink.

35. Then, on July 15, 2019, there were data glitch issues for one channel of uplink, which should not have occurred if the communication pathway was functional.

36. At that point, it was clear to Screened Images that the data glitch and timing problems were likely to extend into the remaining project channels, which were already significantly behind schedule.

37. Vanteon's failures occurred in the basic communication pathway work and did not have anything to do with any of the development tasks, schedule, and costs of the Phoenix Project.

38. This was basic work that Vanteon should have been able to complete on its own from the first day of the project, and, in fact, Vanteon had represented its ability to complete such work prior to entering any formal agreements with Screened Images.

39. The work for which Screened Images hired Vanteon has yet to substantively begin.

40. At the outset, Vanteon estimated that this project would take approximately 10 weeks for the delivery of Phase 1 SOW, and that Phoenix Phase 1 Development would be complete by April 15, 2019.

41. Vanteon also estimated that it would cost approximately $325,900.00 to get through this phase of the work.

42. To date, Vanteon has invoiced Screened Images more than $348,081.00, an amount in excess the project's entire budget.

43. To date, nearly none of the Phase 1 work has been completed.

44. Vanteon, after receiving at least $336,036.24, has still failed to perform any work beyond the most preliminary tasks.

45. In order to attempt to keep this project moving forward, Screened Images offered to extend the development schedule that was been initially proposed by Vanteon and memorialized in written contracts to accommodate Vanteon's many failures, with achievable milestones and additional payment upon completion.

46. Vanteon has refused to act in good faith to reassess the project schedule, which schedule Vanteon unilaterally violated, and has instead entirely abandoned the project.

47. Vanteon has also refused to refund Screened Images's payments.

27414162.v1

## COUNT I
### (Breach of Contract)

48. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

49. Through the Master Services Agreement and the parties other written and oral agreements, Vanteon contracted to provide technology development services in accordance with the terms of those contracts.

50. Screened Images has performed all of its contractual obligations to Vanteon.

51. Vanteon has failed to perform its contractual obligations to Screened Images.

52. By failing to meet its obligations under those agreements, Vanteon has materially breached its contracts with Screened Images.

53. Screened Images has been damaged by Vanteon's breach of contract.

## COUNT II
### (Unjust Enrichment)

54. Plaintiff repeats and re-allege the preceding allegations as if fully set forth herein.

55. Vanteon has received funds in excess of $300,000.00 from Screened Images, and has not provided the paid-for products or services.

56. Vanteon has benefitted from the receipt and ability to use the funds to the detriment of Screened Images.

57. By refusing to repay these funds, Vanteon has unjustly enriched itself, to the detriment of Screened Images.

58. Equity and good conscience require restitution to Screened Images for Vanteon's receipt and ability to use the funds paid by Screened Images.

59. Screened Images has been damaged by Vanteon's unjust enrichment.

## COUNT III
### (Negligent Misrepresentation)

60. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

61. Vanteon negligently represented to Screened Images that it had the required expertise and skill to provide services and products, in order to induce Screened Images to enter into the Master Services Agreement and pay Vanteon.

62. Vanteon specifically negligently represented that it had the skill to use the Xilinx evaluation board, a critical component of the Project.

63. Vanteon's representations were false, as Vanteon lacked any level of expertise and skill required to develop the Phoenix Project.

64. Screened Images reasonably relied on Vanteon's representations.

65. Screened Images would not have gone into business with Vanteon if it had known that Vanteon's representations were false.

66. Screened Images been damaged by Vanteon's negligent misrepresentations.

## COUNT IV
### (Fraud in the Inducement)

67. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

68. In or around April 2018 Vanteon intentionally represented to Screened Images that Vanteon had the required expertise and skill to provide services and products necessary to develop the Phoenix Project, including representations that Vanteon employed skilled engineers with experience designing telecommunications solutions of exactly the type necessary to develop and to complete the Phoenix Project.

69. Vanteon also intentionally represented that it had the requisite expertise to use the Xilinx evaluation board, a critical component of the Project, which is an "off the shelf" product that should have been simple to use for a company with Vanteon's purported expertise.

70. Vanteon made such representations at numerous meetings with Screened Images and their consultant on or about at least April 23, 2018 and May 8, 2018, including through written promotional material that stated that Vanteon had a SDR platform that "offers the following key features: Xilinx Zynq Family FPGA for high performance signal processing."

71. Vanteon's representations were false.

72. Vanteon knew such representations were false at the time they were made to Screened Images.

73. Vanteon made such known misrepresentations with the specific intent of inducing Screened Images into conducting business with Vanteon, including paying Vanteon hundreds of thousands of dollars and executing various written agreements.

74. Screened Images reasonably relied on Vanteon's representations, and Screened Images would not have gone into business with Vanteon if it had known that Vanteon's representations were false.

75. Screened Images been damaged by Vanteon's intentional misrepresentations not only in the amount Screened Images paid Vanteon, but for the significant lost opportunities and loss of revenue resulting from the reasonable reliance of Screened Images on Vanteon's intentional misrepresentations.

## COUNT V
### (NY GBL § 349, et seq.)

76. Plaintiff repeats and re-allege the preceding allegations as if fully set forth herein.

77. Vanteon intentionally represented to consumers within New York State that Vanteon is "a complete electronic systems design and engineering solutions company with technical emphasis on

Wireless Solutions," and that Vanteon possesses the required expertise and skill to provide services and products necessary "from conceptual design to validated, production-ready hardware."

78. Vanteon intentionally represented to consumers within New York State that Vanteon employs electronic systems designers, programmers, engineers and project managers with sufficient skill and expertise to provide electronic systems design and engineering solutions from design to validated, production-ready hardware.

79. Vanteon's representations were made in the conduct of Vanteon's business, trade or commerce, and in the furnishing of services within New York State.

80. Vanteon's representations were consumer-oriented and intended to induce consumers within New York State to pay Vanteon for goods or services.

81. Vanteon's representations were misleading in a material way.

82. Specifically, Vanteon did not employ electronic systems designers, programmers, engineers and project managers with sufficient skill and expertise to provide electronic systems design and engineering solutions from design to validated, production-ready hardware.

83. Vanteon continues to make such materially misleading representations.

84. Screened Images reasonably relied on the material misrepresentations of Vanteon.

85. Screened Images was injured as a result of Vanteon's deceptive acts and practices.

## COUNT VI
### (Declaratory Judgment)

86. Plaintiffs repeats and re-alleges the preceding allegations as if fully set forth herein.

87. During the course of their dealings, Screened Images provided Vanteon with certain highly proprietary, confidential information for use in the Phoenix Project.

88. Vanteon has refused to destroy or to return such materials to Screened Images.

27414162.v1

89. Vanteon's continuing possession of such materials is without permission, right or license, and constitutes an ongoing trespass to and/or conversion of the property of Screened Images.

90. A dispute exists as to Vanteon's right, license or permission to retain or to possess any materials or documents in any format that contain or refer to Screened Images's proprietary and confidential information.

91. Screened Images requests that this Court enter an order declaring that Vanteon has no right, license or permission to retain or to possess documents in any format that contain or refer to Screened Images's highly proprietary and confidential information; that Vanteon may not use such materials or information for any purpose whatsoever; that Vanteon must return or destroy all such materials and information; and that Vanteon must provide a certification attesting to the same.

**WHEREFORE**, Plaintiff OmniProphis Corp., d/b/a Screened Images, Inc., prays for judgment in its favor and against Defendant as follows:

a. Awarding Plaintiff damages as a result of Defendant's breach of contract;

b. Awarding Plaintiff monetary recovery for the amounts Defendant has been unjustly enriched;

c. Awarding Plaintiff damages for Defendant's negligent misrepresentations;

d. Awarding Plaintiff damages as a result of Defendant's fraudulent and tortious conduct;

e. Awarding Plaintiff damages and attorney's fees as a result of Defendant's deceptive trade practices, including any multiple damages that may apply;

f. Declaring Defendant to be without any right, license or permission to retain or to possess any materials or documents in any format that contain or refer to Screened Images's proprietary and confidential information;

g. Ordering Defendant to return to Plaintiff or to destroy any materials or documents in any format that contain or refer to Screened Images's proprietary and confidential information, and to provide a sworn statement by an officer or director of Defendant attesting to such complete return or destruction;

h. Awarding Plaintiff interest, costs and attorney's fees; and

i. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated:  August 17, 2020

                GOLDBERG SEGALLA LLP

                By: */s/ James M. Paulino II* _____
                James M. Paulino II, Esq.
                Nicholas J. Pontzer, Esq.
                *Attorneys for Plaintiff OmniProphis Corp. d/b/a Screened Images, Inc.*
                2 State Street, Suite 1200
                Rochester, New York 14616
                Tel.: 585-295-8351
                Fax: 585-295-8300
                jpaulino@goldbergsegalla.com
                npontzer@goldbergsegalla.com

                *and*

                KENNEY & SAMS, P.C.

                By: *to seek Pro Hac Vice Admission*___
                Michael P. Sams, Esq.
                Lindsay M. Burke, Esq.
                Reservoir Nine
                144 Turnpike Road
                Southborough, Massachusetts 01772
                Tel.  508-490-8500
                Fax:  508-490-8501
                mpsams@kslegal.com

lmburke@kslegal.com

14